# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **INDIAN HARBOR INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.**_____ |
| | ) | |
| **STATE FARM FIRE AND CASUALTY COMPANY** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **SOUTHERN DESIGN AND MATERIALS, INC.** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **DANIEL GASTON** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **DONALD WAYNE BENSON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff Indian Harbor Insurance Company ("Indian Harbor"), for its Complaint against Defendants, State Farm Fire and Casualty Company ("State Farm"), Southern Design and Materials, Inc. ("SDM"), and Daniel Gaston ("Gaston") (jointly, "SDM/Gaston"), and Donald Wayne Benson ("Benson"), states as follows:

## <u>NATURE OF ACTION</u>

1.  This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure. In this action, Indian Harbor seeks a declaration of the parties' rights and obligations under a commercial general liability insurance policy issued by Indian Harbor to SDM ("the Indian Harbor Policy") and an automobile liability insurance policy issued by State Farm to SDM ("the State Farm Policy") with respect to the lawsuit captioned *Donald Wayne Benson v. Southern Design & Materials, Inc. and Daniel Gaston,* Case No. CV-2024-900165.00 in the Circuit Court of Walker County, Alabama, ("the Benson Lawsuit").  A copy of the Complaint filed in the Benson Lawsuit is attached as Exhibit A.

2.  State Farm has an obligation to defend and indemnify SDM and Gaston because the Benson lawsuit falls within the coverage provisions of the State Farm Policy and is not subject to any exclusion.

3.  Indian Harbor has no obligation to defend or indemnify SDM and Gaston in connection with the Benson Lawsuit because an auto exclusion in the Indian Harbor Policy applies and bars coverage.

4.  Alternatively, if both the Indian Harbor and State Farm Policies provide coverage for the Benson Lawsuit, the State Farm Policy is primary and the Indian Harbor Policy excess, and Indian Harbor has no duty to defend or indemnify SDM

or Gaston unless and until the limit of liability of the State Farm Policy has been exhausted by payment of a loss.

5.    An actual and justiciable controversy exists between Indian Harbor, State Farm, SDM, Gaston, and Benson in that Indian Harbor alleges that it has no duty to defend and/or indemnify SDM/Gaston with respect to the Benson Lawsuit and that such duties fall to State Farm, which has denied its obligations to defendant SDM/Gaston under the State Farm Policy.

## THE PARTIES

6.    Plaintiff Indian Harbor is an insurance company organized and existing under the laws of the State of Delaware, with its principal place of business in Connecticut.

7.    Defendant State Farm is an insurance company organized and existing under the laws of the State of Illinois, with its principal place of business in Illinois.

8.    Defendant SDM is an Alabama Corporation with its principal place of business in Alabama.

9.    Defendant Gaston is resident and citizen of Alabama.

10.    SDM/Gaston are defendants in the Benson Lawsuit and are seeking coverage under the Indian Harbor and State Farm Policies.

11.    Defendant Benson is a citizen of Alabama.  As the plaintiff in the Benson Lawsuit, he seeks a judgment against SDM and Gaston, the satisfaction of

which may depend on coverage under the Indian Harbor and State Farm Policies. He therefore has an interest in the resolution of the issues presented herein and is therefore a necessary party.

## JURISDICTION AND VENUE

12.    Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between Indian Harbor and the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  When an insurer seeks a judgment, the value of the declaratory relief to the plaintiff-insurer is the amount of potential liability under its policy, which includes not only the amount of the claim against the insured for which the insurer may be liable, but also the costs of defending an underlying action against the insured.  *See Scottsdale Ins. Co. v. Calhoun Hunting Club and Lounge*, 360 F. Supp. 3d 1262, 1265 (M.D. Ala. 2018).  In the Benson Lawsuit, Benson alleges to have incurred more than $75,000 in medical bills, which he seeks as damages, as well as a lost wage claim that exceeds the jurisdictional minimum amount in controversy, notwithstanding the other damages sought or the costs of defense.

13.    Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b), because one or more of the Defendants reside within or are otherwise subject to personal jurisdiction in this District and a substantial part of the events or omissions

4

giving rise to this dispute occurred in this District, including the issuance of the Indian Harbor and State Farm Policies to SDM.

**THE UNDERLYING LAWSUIT**

14.    On July 17, 2024, Benson filed the Benson Lawsuit in the Circuit Court of Walker County, Alabama, against Gaston, SDM, and others.  The Benson Lawsuit alleges Plaintiff suffered permanent injuries, physical and mental anguish, incurred medical expenses, and lost wages. The Benson Lawsuit contains the following counts:  (1)  Negligence/Wantonness,  (2)  Respondent  Superior,  (3) Negligent/Wanton Hiring, Training, Retention and/or Entrustment, and (4) Fictitious Defendants.  Plaintiff seeks compensatory and punitive damages in an amount in excess of the jurisdictional requirements, plus costs.  (Ex. A).

15.    The Benson Lawsuit arises from a workplace accident that occurred on or about August 7, 2023.  Gaston, an SDM employee, was operating an SDM hi-rail maintenance truck, a 2020 Kenworth model T800, VIN 1NKDL40X5LJ375750 ("the Kenworth") and traveling behind a hi-rail maintenance truck operated by Benson, who was working within the course and scope of his employment for Norfolk Southern Railway Company.

16.    A hi-rail is a roadway maintenance vehicle designed to travel on public roadways that has additional wheels that allow it to travel over railroad tracks.

17.     Benson alleges stopped his truck on a railroad crossing, and Gaston, unable to stop, collided with Benson's truck, allegedly causing bodily injuries.

18.     Benson alleges that Gaston was negligent in his operation of his truck, that SDM is vicariously liable for Gaston's negligence, and that SDM was independently negligent for its hiring, training, and retention of Gaston and its entrustment of the truck to Gaston.  (Ex. A).

## THE INDIAN HARBOR POLICY

19.     AXA XL issued Indian Harbor Commercial General Liability Policy No. US00126926LI23A to Southern Design & Materials, Inc for the period March 25, 2023, through March 25, 2024 (the "Indian Harbor Policy").  The Indian Harbor Policy provides a $1 million Each Occurrence / $2 million General Aggregate Limit of Liability.  A copy of the Indian Harbor Policy is attached as Exhibit B.

20.     The Indian Harbor Policy's Insuring Agreement provides, in relevant part:

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)**     The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

6

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

(Ex. B, § I.A.1).

21. Section II of the Indian Harbor Policy, "Who is an Insured," extends insured status to SDM and is employees for acts within the scope of their employment or while performing duties related to the conduct of its business. (Ex. B, §§ II.1 and 2).

22. Section I.2.g. of the Indian Harbor Policy contains the following exclusion:

This insurance does not apply to:

\* \* \*

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employments, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

7

\* \* \*

(5)    "bodily injury" or "property damage" arising out of:

(a)    The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

(b)    the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

(Ex. B, § I.2.g).

23.    The Definitions section of the Indian Harbor Policy defines "auto" as follows:

**2.**    "Auto" means:

**a.**    A land vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.**    Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

(Ex. B, § V.2).

24.    The Definitions Section defines "mobile equipment" as follows:

8

12. Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        (1) Power cranes, shovels, loaders, diggers or drills; or

        (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        (2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

        However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

9

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

(Ex. B, § V.12).

25.    The Indian Harbor Policy's "other insurance" provision states, in relevant part:

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

\* \* \*

**b.    Excess Insurance**

**(1)**    This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

\* \* \*

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

\* \* \*

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

(Ex. B, § IV.4).

## THE STATE FARM POLICY

26. State Farm issued Policy No. 413800301 effective February 14, 2023 to August 14, 2023 and providing $1 million in limits. A copy of the State Farm Policy is attached as Exhibit C.

11

27.     The Insuring Agreement in the State Farm Policy's Liability Coverage obligates State Farm to pay "damages an ***insured*** becomes legally liable to pay because of:  (1) bodily injury to others; and (2) damage to property caused by an accident that involves a vehicle for which that ***insured*** is provided Liability Coverage by this policy."  (Ex. C, p. 11).

28.     The State Farm Policy further obligates State Farm to pay attorney's fees for attorneys chosen by State Farm to defend an insured who is sued for such damages.  (*Id*.).

29.     Under the State Farm Policy's Liability Coverage Part, the definition of "insured" includes SDM for "the ownership, maintenance, or use of: (1) ***your car***" and "any other person for his or her use of: ***your car***" when "used within the scope of your consent."  (Ex. C, p. 11).

30.     The "Definitions" section of the State Farm Policy defines "your car" as "the vehicle shown under YOUR CAR on the Declarations Page."  (Ex. C, p. 11).

31.     The State Farm Policy's Declarations Page identifies "YOUR CAR" as the Kenworth that Gaston was driving when he collided with Benson.  (Ex. C, p. 1).

32.     The State Farm Policy contains a Commercial Vehicle Endorsement that adds the following exclusion:

(1)     THERE IS NO COVERAGE FOR AN INSURED FOR DAMAGES ARISING OUT OF THE OPERATION, MAINTENANCE, OR USE OF ANY EQUIPMENT THAT IS TOWED BY, MOUNTED ON, OR CARRIED ON ANY VEHICLE.

This exclusion does not apply to equipment:

(a)   mounted on the vehicle and designed solely for the loading or unloading of the vehicle; or

(b)   designed for:

(i)   snow removal;

(ii)   street cleaning; or

(iii) road maintenance, other than construction or resurfacing.

(Ex. C, p. 46).

33.   The State Farm Policy contains an "other insurance" clause that provides, in relevant part:

The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of your car or a trailer attached to it.

a.   If:

(1)   this is the only Car Policy issued to you or any resident relative by the State Farm Companies that provides Liability Coverage which applies to the accident as primary coverage; and

(2)   liability coverage provided by one or more sources other than the State Farm Companies also applies as primary coverage for the same accident, then we will pay the proportion of damages payable as primary that our applicable limit bears to the sum of our applicable limit and the limits of all other liability coverage that apply as primary coverage.

\* \* \*

(Ex. C, p. 14).

13

34.    Upon information and belief, after the accident at issue in the Benson Lawsuit, SDM notified State Farm of the accident and requested coverage for the accident.  State Farm informed SDM that the accident was not covered by the State Farm Policy.

35.    SDM also notified Indian Harbor of the accident on or about April 24, 2024.

36.    On or about April 30, 2024, Indian Harbor acknowledged receipt of the notice from SDM, requested additional information from SDM, and reserved all rights and defenses under the Indian Harbor Policy during Indian Harbor's investigation and review of the matter.

37.    SDM tendered the Benson Lawsuit to Indian Harbor August 20, 2024, and in response, Indian Harbor agreed to defend SDM and Gaston against the Benson Lawsuit, subject to its prior reservation of rights.

38.    After additional investigation, on October 28, 2025, Indian Harbor sent an additional reservation of rights to SDM in which Indian Harbor agreed to continue providing a defense to SDM and Gaston, subject to its reservation of all rights under the Indian Harbor Policy, including the right to deny coverage based on the policy's auto exclusion.

39.    SDM renewed its request for coverage to State Farm on September 30, 2025.

40.     State Farm responded to SDM's tender with an October 6, 2025 letter reserving all rights to deny coverage under the State Farm Policy.  Notwithstanding this reservation of rights, State Farm has retained independent defense counsel to represent SDM and Gaston in the Benson Lawsuit.

41.     State Farm has not yet provided a supplement to its earlier reservation of rights.  Nevertheless, upon information and belief, State Farm contends that there is no coverage for the Benson Lawsuit under the State Farm Policy because the accident arose from the operation or use of equipment mounted to the Kenworth, and specifically the wheels that allowed the Kenworth to travel over railroad tracks.

## REQUEST FOR DECLARATORY RELIEF

### COUNT I
### DECLARATORY RELIEF:   THE STATE FARM POLICY PROVIDES COVERAGE FOR THE BENSON LAWSUIT.

42.     Indian Harbor reiterates and incorporates by reference the Paragraphs 1 through 41 as though fully set forth herein.

43.     An actual, present, and justiciable controversy has arisen and now exists between Indian Harbor, State Farm, and SDM/Gaston concerning their respective rights, duties, and obligations under the Indian Harbor and State Farm Policies.

44. The State Farm Policy requires State Farm to defend and indemnify SDM/Gaston against a claim alleging bodily injury caused by a vehicle for which SDM/Gaston are provided liability coverage under the State Farm Policy.

45. Under the State Farm Policy, SDM/Gaston are insureds for the ownership, maintenance and use of the Kenworth, which was identified in the State Farm Declarations as "YOUR CAR," and Gaston was allegedly operating the Kenworth within the scope of his employment by and with the consent of SDM.

46. The Benson Lawsuit involves a claim for damages for bodily injury caused by an accident involving the Kenworth, in that the Benson Lawsuit arises from a collision between a vehicle operated by Benson and the Kenworth operated by Gaston.

47. The State Farm Policy's exclusion for damages arising out the operation, maintenance, or use of equipment mounted on the Kenworth does not apply, in that the subject accident did not arise from any equipment separate from the vehicle, but from the vehicle itself. In the alternative, the wheels on the Kenworth were designed to permit the Kenworth to be used for road maintenance.

WHEREFORE, Indian Harbor seeks the following relief:

A. A judicial declaration that the State Farm Policy requires State Farm to defend and indemnify SDM and Gaston in connection with the Benson Lawsuit;

16

B.    A judicial declaration that State Farm is required under the terms of its policy to assume SDM's and Gaston's defense of the Benson Lawsuit;

C.    Such further relief as the Court deems just and proper.

## COUNT II
## DECLARATORY RELIEF:  THE INDIAN HARBOR POLICY EXCLUDES COVERAGE FOR THE BENSON LAWSUIT

48.    Indian Harbor reiterates and incorporates by reference the Paragraphs 1 through 47 as though fully set forth herein.

49.    An actual, present, and justiciable controversy has arisen and now exists between Indian Harbor, State Farm, and SDM/Gaston concerning their respective rights, duties, and obligations under the Indian Harbor and State Farm Policies.

50.    The Indian Harbor Policy does not apply to bodily injury arising out of the ownership, maintenance, use or entrustment of an "auto," whose definition includes a land motor vehicle designed for travel on public roads, and any other land vehicle subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

51.    The Kenworth that Gaston was driving at the time of the accident at issue in the Benson Lawsuit met the definition of auto under the Indian Harbor policy because the Kenworth was designed for travel on public roads and was subject to the

mandatory liability insurance requirements imposed by the laws of Alabama, where the Kenworth was licensed and principally garaged.

52.    The Benson Lawsuit alleges a bodily injury arising from Gaston's use of the Kenworth, which allegedly collided with a vehicle driven by Benson, resulting in injuries to Benson.

WHEREFORE, Indian Harbor seeks the following relief:

A.    A judicial declaration that the Indian Harbor Policy excludes coverage for the Benson Lawsuit;

B.    A judicial declaration that Indian Harbor is not obligated to defend or indemnify SDM/Gaston against the Benson Lawsuit;

C.    Such further relief as the Court deems just and proper.

## COUNT III
## DECLARATORY RELIEF:  THE STATE FARM POLICY'S COVERAGE IS PRIMARY.

53.    Indian Harbor reiterates and incorporates by reference the foregoing Paragraphs 1 through 52 as if fully set forth herein.

54.    An actual, present, and justiciable controversy has arisen and now exists between Indian Harbor, State Farm, and SDM/Gaston concerning their respective rights, duties, and obligations under the Indian Harbor and State Farm Policies.

55. The State Farm Policy provides that the liability coverage provided by its policy applies as primary coverage for the ownership, maintenance, or use of the Kenworth if the State Farm Policy is the only "Car Policy" issued to SDM that provides liability coverage that applies to an accident as primary coverage.

56. The Indian Harbor Policy provides that the liability coverage it provides is excess over any other insurance if the loss arises out of the maintenance or use of an auto, to the extent the loss falls within the exception to the policy's auto exclusion.

57. The Benson Lawsuit arises from a motor vehicle collision involving the Kenworth, which State Farm insured through its car policy, and upon information and belief, there was no other car policy issued to SDM that provided coverage for the subject accident.

58. The State Farm Policy's coverage is therefore primary over whatever coverage might exist under the Indian Harbor Policy if the Indian Harbor Policy's auto exclusion does not apply.

WHEREFORE, Indian Harbor prays for:

A. A judicial declaration that if both the State Farm Policy and Indian Harbor Policy provide coverage for the Benson Lawsuit, the State Farm Policy's coverage is primary and the Indian Harbor Policy's, excess;

B. A judicial declaration that State Farm, as the primary insurer, has a duty to defend and indemnify SDM/Gaston against the Benson Lawsuit;

19

C.    A judicial declaration that if both the State Farm and Indian Harbor

Policies provide coverage for the Benson Lawsuit, Indian Harbor owes

no duty to defend or indemnify SDM/Gaston until the State Farm

Policy's liability limits have been exhausted by payment of a loss; and

D.    Such further relief as the Court deems just and proper.

DATED: August 10, 2026                    Respectfully submitted,

                                          /s/ Michelle L. Crunk
                                          Stephen E. Whitehead    (ASB-2282-T68S)
                                          Michelle L. Crunk        (ASB-2967-I71C)
                                          *Attorneys for Plaintiff Indian Harbor*
                                          *Insurance Company*

**OF COUNSEL:**
**LLOYD GRAY WHITEHEAD & MONROE, P.C.**
880 Montclair Road, Suite 100
Birmingham, AL 35213
(205) 967-8822
steve@lgwmlaw.com
mcrunk@lgwmlaw.com